UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TONY JOSEPH TABOR | CIVIL ACTION NO. 18-0621 |
| | SECTION P |
| VS. | |
| | JUDGE ELIZABETH E. FOOTE |
| JERRY GOODWIN, ET AL. | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Plaintiff Tony J. Tabor, an inmate at Elayn Hunt Correctional Center formerly confined at David Wade Correctional Center ("DWCC"), proceeds pro se and in forma pauperis and moves to alter or amend the December 20, 2019 Judgment.[1] [doc. #s 61, 62]. Defendants oppose the motions. [doc. # 68].

For reasons below, the Court should grant the motions in part, open and reinstate this proceeding, alter and amend the Judgment to decline summary judgment on Plaintiff's conditions-of-confinement claims only, and decline to alter or amend the judgment with respect to Plaintiff's claims of retaliation and investigatory interference.

**Background**

On March 15, 2019, the Court dismissed: (1) Plaintiff's claims against Defendants LeBlanc, Seal, Robinson, Adkins, Risk Management Insurance Co., and the Louisiana Department of Public Safety and Corrections; and (2) Plaintiff's claims of sexual harassment, inadequate medical care, inadequate nutrition and hydration, and excessive force. [doc. # 37]. The Court retained Plaintiff's investigatory interference claim, his claim that Defendant Hayden

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

placed him "on suicide watch for several days as a form of retaliation," and his claims (with the exception of his claim of inadequate nutrition and hydration) concerning conditions in which he was confined for over five years. *Id.*

On October 7, 2019, the remaining defendants moved for summary judgment on Plaintiff's remaining claims. [doc. # 50]. Plaintiff did not oppose the motion. The undersigned issued a Report and Recommendation on November 5, 2019, recommending granting the motion. [doc. # 52]. Plaintiff filed an untimely objection, which the Court allowed. However, the Court found that he did not dispute Defendants' evidence. On December 20, 2019, the Court granted Defendants' motion and dismissed Plaintiff's remaining claims without prejudice for failure to exhaust administrative remedies. [doc. # 56].

Plaintiff filed two more motions, maintaining that he exhausted his administrative remedies and seeking an extension of time to produce evidence. [doc. #s 57, 58]. The Court denied both, holding that Plaintiff had almost two years to prove exhaustion yet failed to do so, emphasizing that Plaintiff never represented that he actually completed the administrative remedy process ("ARP"), and reasoning that Plaintiff presented "nothing more than nebulous explanations . . . ." [doc. # 59].

On January 10, 2020, Plaintiff filed a motion to alter or amend the Judgment, maintaining that he now provides proof that he exhausted all administrative remedies. [doc. # 61]. He filed a second, similar motion on January 27, 2020. [doc. # 62]. Approximately eight months later, the Court instructed the undersigned to consider the motions, opining that Plaintiff's evidence, "as untimely as it is, causes the Court to question the footing upon which this case was dismissed, as it—at least facially—contradicts the representations made by the Defendants." [doc. # 63].

2

Defendants responded to the instant motions on October 28, 2020, arguing that this proceeding should remain closed because Plaintiff did not exhaust his administrative remedies and, even if he did, he presented evidence of exhaustion too late and his claims are also barred by the statute of limitations. [doc. # 68].

**Law and Analysis**

Plaintiff filed his first motion on approximately January 10, 2020, twenty-one days after the Court issued the December 20, 2019 Judgment. [doc. #s 56, 61]. Plaintiff's second motion appears to be a mere continuation of his first motion. [doc. # 62]. Thus, Plaintiff seeks to alter or amend the Judgment—as opposed to seeking relief from a judgment under Rule 60—because under Federal Rule of Civil Procedure 59(e), "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

Rule 59(e) allows a district court "to rectify its own mistakes in the period immediately following" its decision. *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982). "Relief under Rule 59(e) may issue only if Plaintiffs demonstrate 'a manifest error of law or fact or . . . newly discovered evidence.'" *Def. Distributed v. United States Dep't of State*, 947 F.3d 870, 872–73 (5th Cir. 2020) (quoting *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019)). "District courts have 'considerable discretion in deciding whether to reopen a case under Rule 59(e).'" *Id.* (quoting *Edward H. Bohlin Co. v. The Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993)). That said, "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

Here, Defendants argued in their motion for summary judgment that Plaintiff "did not complete the administrative remedy procedure process with regard to ARP Numbers: DWCC-

16-0700, DWCC-17-0503, DWCC-17-0590, DWCC-18-0243 or DWCC-18-0694." [doc. # 50-3, p. 6]. Defendants relied on an affidavit from a legal liaison at DWCC, who averred that Plaintiff withdrew all five grievances. [doc. # 50-4, p. 2].

Now, Plaintiff first presents a document demonstrating that he filed a grievance, designated DWCC-2015-0218, in which he reportedly complained that he was forced to live in extremely cold temperatures without proper clothing. [doc. # 61-1, p. 1]. The document lists March 5, 2015, as the "incident date." *Id.* It also reveals that Plaintiff completed both steps of the administrative remedy process.[2]

Defendants "do not dispute the information regarding Step 1 and Step 2 on the first page of Plaintiff's evidence appears to indicate that his complaint was received, accepted and disposed of, thus completing the ARP process." [doc. # 68, p. 2]. Defendants add that they were unaware of DWCC-2015-0218. *Id.*

Thus, Defendants do not contend that Plaintiff failed to exhaust his available administrative remedies with respect to his claim that he was forced to live in extremely cold temperatures without proper clothing. While the "incident date" on the grievance was March 5, 2015, Plaintiff alleges that he was confined under the same offending conditions for over five years before he filed this proceeding on approximately April 28, 2018. [doc. #s 1, p. 3; 13, pp. 1-3; 16; 17, pp. 1, 3].

---

[2] Defendants acknowledge that the "grievance procedure . . . is a two-step process that begins with a letter or grievance sent to the warden . . . ." [doc. # 50-3, p. 5]. "If the warden does not respond, or if the inmate is dissatisfied with the warden's response, the inmate may proceed to the second step by requesting review of the matter by the Secretary of the Louisiana Department of Public Safety and Corrections ('the Department')." *Id.* at 5-6.

Interestingly, Defendants included this exact evidence in their initial disclosures on April 8, 2019, months before they moved for summary judgment. [doc. # 42-5, p. 1]. The parties, as well as the Court, apparently overlooked it.

Defendants argue that if "the evidence attached to Plaintiff's fist motion (Rec. Doc. 61-1) is sufficient to establish that he exhausted his administrative remedies with regard to the claims in this lawsuit, Defendants respectfully submit that Plaintiff's claims are barred by prescription." [doc. # 68, p. 17]. However, the Court never reached Defendants' statute-of-limitations defense; thus, raising that defense here will not prevent alteration or amendment of the Judgment. Rather, Defendants essentially ask the Court to alter or amend the Judgment in their favor by finding that Plaintiff's claims are untimely. The undersigned declines to opine on the merits of that defense, considering that the instant motions, as well as the relevant standard of review, concern only the grounds on which the Judgment was based.

Next, Plaintiff presents two documents, a "First Step Response Form" and a "Second Step Response Form," indicating that he exhausted certain claims. [doc. # 62-1, pp. 15-16]. The case number on both is "DWCC-2016-0448." *Id.*

On April 24, 2017, in the "First Step Response Form," the "First Step Respondent" responded with the following relevant[3] statements:

> I have reviewed your grievance dated 15/May/2016 concerning your complaint in relation to being subjected to cruel and unusual punishment. . . . Col. Nall contends policy governs lighting in every housing unit and the lights are left on in the cellblocks due to security and safety concerns involving risks associated with maximum-security offenders. Also, he states winter issue sweatshirts are given to offenders who are housed in maximum security, once a year. . . . Lastly, your medical and mental health concerns are adequately treated by the Medical and Mental Health Dept. upon request and there is no indication that your health

---

[3] The undersigned summarizes the contents for brevity, providing only the portions of the response necessary to demonstrate the probable subject matter of Plaintiff's grievance.

5

> and/or well-being have been adversely affected by being housed in a cellblock housing unit.

*Id.* at 15. On June 6, 2017, the second-step respondent responded with the following relevant statements:

> [O]ffenders housed in Extended Lockdown, Protective Custody etc. are allowed: Medical & Mental Health Services-Emergency-Daily, Sick call Mon-Fri; Dental Services-As preparation programming; Classification Services-weekly rounds; . . . Recreation-1hr yd/5X per week (weather permitting). As Col. Nail indicated in the first step response, policy governs lighting in every housing unit and the lights are left on in the cellblocks due to security and safety concerns involving risks associated with maximum-security offenders. Also, that proper attire is issued to the offenders who are housed in maximum security, based on the season of the year. . . . As noted above, the mental health department provides access to mental health clinical services 5 days a week and after hour services for emergency treatment. . . . A statement was also received from the Medical staff indicating that you claim you are not receiving needed medical intervention due to your living conditions on extended Lockdown was also inaccurate. . . . You have failed to provide any evidence to substantiate your allegations that you have been subjected to 'oppressive/tortuous conditions' or that your custody level hinders your access to appropriate clothing, education, recreation, medical and mental health services.

*Id.* at 16.

Defendants concede that they "cannot dispute that First and Second Step responses were issued regarding DWCC-2016-0448, wherein the Second Step response addressed conditions of the DWCC Lockdown Facilities." [doc. # 68, p. 4]. As a result, Defendants did not, and do not now, demonstrate the absence of a genuine dispute of material fact concerning the exhaustion of the specific grievances above. While it is not clear if Plaintiff's conditions-of-confinement grievances mirror his conditions-of-confinement claims here, it suffices that (1) the grievance responses suggest his grievances approximate his claims here concerning deprivation of sleep,

6

warmth, and mental health;[4] and (2) Defendants do not argue that the grievances failed to provide them a fair opportunity to address the conditions of which Plaintiff complains in his pleadings.

Defendants argue: "If in the event this Court determines that the evidence attached to Plaintiff's second motion (Rec. Doc. 62-1) is sufficient to establish that he exhausted his administrative remedies with regard to the claims in this lawsuit, Defendants respectfully submit that this matter remain closed, as Plaintiff was given several opportunities to dispute Defendants' contentions and establish exhaustion." [doc. # 68, p. 5]. The undersigned disagrees for three reasons.

First, Defendants moved for summary judgment on grounds that Plaintiff withdrew five grievances prior to completing the administrative remedy process. Plaintiff did not, and does not, dispute that. Defendants' "contentions," in other words, were never that Plaintiff failed complete the administrative remedy process with respect to the other, relevant grievances described above.

Second, Plaintiff (perhaps unwittingly or unknowingly) disputed that he failed to exhaust his remedies when he presented the same grievance responses above in exhibits to his initial complaint. [doc. # 22-1, pp. 35-37]. Again, it appears that the parties and the Court overlooked this evidence.

Third, in his objection to the undersigned's Report and Recommendation, Plaintiff argued that he "definitely exhausted his administrative remedies[,]" thus disputing Defendants'

---

[4] See *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit . . . .").

argument prior to the Judgment. Plainly, Plaintiff could repeat, and elaborate on, his statement in testimony at trial, thereby introducing evidence of exhaustion.[5]

Moving on, neither party addresses the exhaustion of Plaintiff's claims that (1) "Defendants took extraordinary steps to interfere with counsel's investigations [of] the conditions at DWCC" (i.e. Plaintiff's 'investigatory interference' claim),[6] [doc. # 13, p. 6], and (2) that Defendant Hayden placed him "on suicide watch for several days as a form of retaliation" after he spoke to an attorney about conditions at DWCC. [doc. # 13, p. 4]. The undersigned located a grievance labeled DWCC-2018-0243, relevant to the retaliation claim,[7] but Plaintiff withdrew this grievance prior to completing both steps of the administrative remedy process. [doc. # 50-4]. The undersigned did not find a relevant grievance concerning investigatory interference. Thus, the Court should not alter or amend the Judgment with respect to these claims.

In short, the error to be remedied is that Plaintiff did not genuinely dispute Defendants' argument that he failed to exhaust his administrative remedies. Considering the lenience owed to pro se, incarcerated parties, the Court should employ its considerable discretion in this arena to amend/alter the Judgment and reinstate this proceeding.

---

[5] See *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) ("New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. 'Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be presented in a form that would not, in itself, be admissible at trial.'").

[6] The undersigned originally recommended dismissing this claim, but the Court did not adopt the undersigned's recommendation. [doc. #s 19, p. 7; 37].

[7] [doc. # 42-5, pp. 5, 9].

**Recommendation**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Tony Joseph Tabor's motions be **GRANTED IN PART**, that this proceeding be opened and reinstated, and that the Court's December 20, 2019 Judgment be **ALTERED AND AMENDED** to deny summary judgment on Plaintiff's remaining conditions-of-confinement claims only. The motions should otherwise be denied: the Court should not alter or amend the Judgment with respect to Plaintiff's claims of retaliation and investigatory interference.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 2nd day of November, 2020.

_____
Karen L. Hayes
United States Magistrate Judge